Case number 245784, United States of America v. Daniel Lockridge. Oral argument not to exceed 15 minutes per side. Mr. Anderson for the appellant. Good morning. Good morning, Judge. May it please the court, my name is Howard Anderson. I'm here on behalf of the Supreme Court Counsel for Mr. Lockridge. Although, as you know from the briefs, there are two issues that were briefed. One is foreclosed by circuit precedent. So I'm just going to talk about issue number one, which is to whether the district judge, as part of supervised release, can delegate to the probation office the choice about whether following 210 months in prison, whether Mr. Lockridge is going to be able to begin living his life, or whether he's going to be in an inpatient facility for drug abuse, or alcohol abuse, or for other problems he might have, for up to three years of a supervised release provision. Can I put a question both to you and the government about just how we should construe the conditions of supervised release? We've had a couple cases like this where there are different conditions, some, frankly, a lot harsher than this. And the basic idea was to construe the judgment as calling for a determination closer in time to the individual's release. Because it really does seem quite strange to be, like, let's say, quote, you win. And you get the district court judge to say yes or no to each of these questions. We'll put both of them on the table. It seems very strange to do that 210 months out. So the way we've handled these types of challenges before is to say, no, no, that's an uncharitable reading of the judgment. What's really going on here is when they get close to the time for release, probation office will make a recommendation, not unlike the PSR, and say, well, I think this person needs inpatient, or no, things have really gone well, it should be outpatient. But either way, the recommendation will go to the judge at that point. And everyone will have a chance to participate. So that's how we've handled these before. I think the Tenth Circuit did something like that. Would you consider that a loss? Well, Judge, I mean, from my perspective, doing what the district judge indicated that he wanted to do. Because this is not coming up on plain error. So, you know, I engaged with the district judge, and it was clear when he overruled it, as he has done in the other cases, that he wanted to give it to probation. And, in fact, that's what the PSR addendum says. That is, the probation office is going to determine. You're making the argument we can't construe it in a way that helps your client. Well, Judge, I would say that would be unfair to the district judge. And, again, trying to be as objective as I can as a partisan. Can I ask you a follow-up? Because if, let's just assume this plays out in 210 months from now, the probation officer says, inpatient. Can't you object and go to the district judge? I can't, because I won't be there. Right? So it's going to be Mr. Lockridge, pro se. Right? And so, like, that's part of the problem that we have. Right? So, like, right now he has counsel who can advocate for his interest. Right. But he could ask for counsel to be appointed. And usually a district judge, in most of those instances, will appoint counsel if there's an actual issue. But that may happen after he's already in the inpatient program. And so he will have missed out on weeks or months until we can get the hearing in. And so, again, our problem is that, and this is an issue that the Sentencing Commission is looking at as part of supervised release. But wouldn't the district judge have said, well, when he gets out, he's going to do inpatient program unless probation recommends otherwise? And then I would have the ability now to then take the appeal and then to ask you all, you know, to look at the record. But we're never going to. That's Judge Sutton's point, is it's 200 months away. I mean, he's got the RDAP program. Right? Presumably your client's going to go through the RDAP program. Almost, what, 50 percent of federal And so the RDAP program exists. He's going to be in there for 200 months. He may come out and not need any drug treatment at all. And so you're asking a district judge to, like, peer into the future and figure out what to do. Well, again, so I would agree with you that if the judge, you know, I guess because it's 210 months out, I don't think the government can sustain its burden of proving that that is the least restrictive condition that's required. As the government is correct to note, these conditions can be modified. And so if in the future they want to file a petition, then it will be modified after a hearing, not you have to comply with it until you get the hearing. And that's my point. Another way to think about it is just a presumption of inpatient. I mean, take this seriously. That's the message. Take this seriously. Otherwise this is what you're going to get. But it's all challengeable down the road. And the fact that it's being challenged here, if your client doesn't care enough to say, you know, when someone comes in and says, you're leaving in three months and you're going to this inpatient thing, your client doesn't care enough to write a letter by himself, you know, that's not that big a  Well, Judge, I agree counsel's better. I mean, but you're the guy that just refused to construe the order in a way that helped your client. So I'm not sure what the benefit would be. Which is my position about that was on plain, if this were coming up on plain error. That was not the premise. That phrase is one you brought into the conversation, had nothing to do with what I said. And, Judge, what I was saying is, to be fair to Judge Collier, right, if this had come up on Work on your client. Work on your client for now. We'll worry about Judge Collier. Yes. Judge, I don't think that it is appropriate on this record to order inpatient treatment 210 months from now. And that if you are looking on the merits, it is What if we construe it as presumptively inpatient, challengeable at the time? Well, Judge That's illegal? That it's not, again, as we are here today, I do not believe that inpatient treatment is appropriate 210 months from now. Can I ask you just a pragmatic question, which is, I was a district judge for ten years. What I remember is I always consulted with probation. We'd talk about it. And they'd always say how There were two things that always came up. Inpatient is expensive and spots are hard to find. So they always preferred outpatient. Has that changed? Has the probation office gotten a flux of money and available bed space to put people in inpatient? Because, actually, the presumption is outpatient if probation can do it. Well, Judge, most of my experience with this is on the pretrial release side. I'm talking about supervised release. We're not in pretrial release. That's a different world. And so, Judge, what I'm saying is I don't know because I'm not appointed to supervised release cases on a regular basis. I'm appointed to the felony one. And probation is very good about getting my clients into inpatient drug treatment, which I certainly appreciate. But on the supervised release side, I have no idea. Every criminal defense attorney is trying to help them because you want to get up at sentencing and say, good for you, I commend you for this, but you want to get up and say, look, my client has made these strides. But my point is on the back end, that same – I remember pulling hair out to try and get people into inpatient. We sent people to Louisville from northern Kentucky to get them into inpatient treatment because we couldn't find any bed space. Unless something's drastically changed, and in Eastern District of Tennessee, I imagine it's even more sparse. Answer his question first, sorry. As we can judge again, I just don't know because I'm not involved in the back end, so I apologize. Put your client to the side. What is the right answer? Is the right answer what I think it is, that someone's going to have to think seriously about inpatient, outpatient, but it's premature to do that now? Yes, so I think the right answer is to do what the Second Circuit does. No, but is that what you argued to Judge Collier? Did you say to Judge Collier, I think the wise move here is don't say anything about this. 210 months is a long time, and we should just talk through it then. My objection was, Judge, it should be limited to outpatient now. So that was my objection. I would have said that's wrong, too. I would say how can you know outpatient 210 months just as how can you know inpatient 210 months? That makes no sense to me. Well, but the case law says that there's a fundamental difference in the liberty interest between outpatient and inpatient. And so that's what the Second Circuit and the other circuits say, is that even though outpatient is burdensome, at least you get to sleep at home with your family and do the things that you want. And so, yes, you can go and you can petition if you don't like it. But it's the inpatient, which is the functional equivalent of a jail setting. That's what makes it different. You know, where in the context of psychiatric treatment, for example, you might be forcibly medicated in an inpatient facility. And so that's what makes it different. And so, again, I argue to the judge, let's just have it be if probation Is there a case that lines up along the point you were trying to make that the problem with Judge Collier's judgment is not that it can't be challenged. You acknowledged it can be. It's that Anderson might not have a lawyer. Has the court made that point? I don't think they've made that point, but I think that's sort of what's underlying the Fifth Circuit's view, where if it's sort of close in time, then we're not going to defer to probation because we can sort of challenge it on the merits. But if it's sort of long. I know the Fifth Circuit line of cases, but I don't remember them talking about attorneys. But the point they were making about shortened time was that it's not premature ten months out to make a choice. That's not a lawyer point. That's a back to prematurity point. And so I'm not saying that that was explicit, but I think that sort of undergirds that we will be able to effectively litigate it on appeal if it's short in time, whereas if it's 210 months out, we are very hypothetical at this point. And so, Your Honor, I see my time's up. I'll be happy to answer questions in reply. Thank you. Mr. Samuelson.   May it please the Court. My name is Brian Samuelson, and I represent the United States. I'd like to start with this issue about how the condition should be construed. And as I read this condition, it does not require inpatient treatment. What it requires and what it allows is the probation officer to make a determination closer in time when the defendant gets out of custody about whether inpatient or outpatient treatment or what kind of treatment is required. And then if the defendant objects at that point, he can petition the Court for a modification or a hearing at which he would be entitled to counsel, and the Court can weigh in there. You're also entitled to counsel in whatever, 205 months? Is that true? Yes, Your Honor. I do believe Federal Rule of Criminal Procedure 32.1C allows for counsel in modification hearings. I see. So if the defendant objects to what the probation officer decides or determines is appropriate, he could petition the Court for a modification hearing and would be entitled under that rule to be represented by counsel. That explains why no one is talking about counsel. This seems so obvious to me. Why isn't this more explicit in these hearings? In other words, once the sentence is beyond a year or two, I just would have thought everyone had a working assumption. There are some serious issues, drug testing, inpatient, outpatient. They're very important. They're very relevant to the defendant when it comes to supervised release. But that, of course, you assess those closer in time. I just would have thought everyone worked that way. Well, Your Honor, I don't disagree, and I think there are treatment details that everybody understands that probation or treatment providers will assess at the time of treatment. I don't think it's practical or feasible to say 210 months in advance that inpatient treatment is definitely going to be required for this patient or that. Well, it doesn't sound like Judge Collier responded that way to Mr. Anderson at this hearing. That's not quite how I read the record. As I read the sentencing transcript, the objection was that this condition should be limited to outpatient treatment, that inpatient treatment should be taken off the table. And Judge Collier said, I'm not going to do that, and thus, essentially, by remaining silent on that point, left it to probation 210 months from now to make that assessment with up-to-date information, expertise of treatment providers in a much stronger position to make that assessment. Did Judge Collier order the RDAP program? He recommended it, yes. Okay, that's what I mean. Yes, Your Honor, he did. Sorry. Yes, and because of the length of the sentence, because of that treatment, the situation could be much different years from now than it is today. And that's why it makes good sense to consider inpatient or outpatient treatment, this kind of placement as a treatment detail. And this Court's case law is clear that there are treatment details, like the length of treatment, the type of program, number of drug tests, and we would submit placement in one of these programs that should be made by, in the first instance, by probation officers with more relevant and current information. I'm just curious the government's kind of how you AUSAs do this. You must go into some sentencing hearings saying, we don't think you need to be talking about inpatient, outpatient at all, because it has nothing to do with the crime or the individual. And sometimes you say, we don't think we need to be talking drug testing at all, because it has nothing to do with this. But other times you say, those things are relevant, and then you say, but if it's a long enough sentence, let's not decide it today. I know you're speaking for a lot of people, but I'm just curious your rough sense, even on hearsay grounds, of how people do this. My rough sense from these proceedings and from the case law is that the question of sentencing is really whether treatment is required. That's the basic question that the parties address then. And that will depend on the offender. It will depend on the type of offense. Here, both offender and offense suggested the need for drug treatment. And that's the initial primary decision that the court is required to make at sentencing. And then all the other details of that treatment, where, when, how often, what intensity, are left to treatment experts closer in time to the actual treatment. And that regime serves important purposes of supervised release. If the purpose of supervised release is to integrate this offender back into society, to encourage rehabilitation, that demands a close fit between the needs of the defendant and the actual treatment received. And delegating this sort of discretion to the probation officer in the first instance, that is the tailored fit. That is the bespoke option. That is the option that allows the most flexibility and the most chance of actually instituting treatment that works for this defendant. And I think along that vein, there are significant practical problems with requiring district courts to essentially resolve the inpatient treatment question years in advance. I think as a practical matter that these beds are limited, that funding is limited, and requiring sort of judicial preauthorization to get inpatient treatment would significantly limit the flexibility and effectiveness of these supervised release programs. All right, thank you. I think we understand your arguments. Thank you. I appreciate it. All right, Mr. Anderson, you've got some rebuttal. Thank you. Just briefly, one, as I understand it, the Sentencing Commission is looking at moving the special conditions of supervised release closer in time as a proposal that they are taking some comment on, or at least that's what I understood from the CLE, from the probation office, not too long ago. That's one of their priorities. I'm not waiting to do this. Right, because, again, it is very strange that I today have to figure out what is it going to look like 20 years from now, but currently this is the system that we have, and so I have to say on this record, I don't think it's appropriate. It would be much more efficient to do it, you say, 18 years from now, but this is where we are. On your question about Just to ask you to respond to the point I thought he was making that resonated with me, at least, which was what I heard him to be saying is one thing that does have to be addressed is is some treatment required? And I know that seems strange, 20 years out or almost 20 years out, but that's what's going on. That's why anyone's even talking about this. And is that the thing the Sentencing Commission is debating, that even the is treatment required question should not be decided at sentencing? It should be decided within a year or two of release. Is that the thing they're thinking? As I understand from the CLE, they are contemplating doing all of those, the special conditions, closer in time to when you actually get out, when you've got a better sense as to who is this person, how is he done in prison, and so I don't know exactly if it's going to be, you know, if it's more than five years of a sentence or whatever. That's one of the things they are sort of pondering. It makes a lot of sense to me that we should do it, you know, on the back end and the front end, but sort of here is where we are. And then as to your question about how these things work in practice with the AUSAs, my experience having done this for about 20 years is that the government always defers to probation, and so they say whatever probation wants we agree with. That's usually how it has come up. I have never had a case where the government has asked for treatment that probation didn't want or vice versa, and so they always just say whatever. And frankly, it's the time of imprisonment that drives the sentencing bus most of the time, and so very few lawyers even make objections to the conditions of supervised release, because, again, sort of big picture for the client, you know, is sort of prison time. But I also want to point out here that, yes, you know, we've been talking about drug treatment, but this is also mental health treatment, right, and so he might be out on the streets for six months, and then, you know, on a Tuesday the probation office says you've got to report to inpatient treatment by 5 o'clock today. Right? He's then left with a choice. Either I disobey the order and I can be revoked for disobeying, or I've got to go in and then I've got to see about, you know, can I get mail, how do I get into court. And so my point is if in the future we think that he might need this and he doesn't agree that he needs it, right, because if he agrees it's very easy we can get the order done the same day, right, is if he disagrees then we can tee it up for a hearing, the government can file a petition, somebody like me can get appointed and we can figure it out. But here at the outset saying he is going to need it 210 months from now, I'm authorizing probation to put him in inpatient treatment for an indeterminate amount of time, up to three years, right, because there's no cap on it, right? It's not that I think you need three months of treatment and I'm going to leave it up to probation, whether it's inpatient or outpatient. It's just you've got three years of supervised release, you've got to do what your probation officer says, and I'm giving them the authority to say that you can't leave the prison, but instead you're going to go from the prison side to an inpatient bed somewhere. And again, maybe it's right, maybe it's wrong, but it's way too early now to predict, and even the government conceded in their brief that they don't know that he needs inpatient treatment. Has that ever happened? Because it never happened with, what, a thousand of my defendants that they went straight from jail to inpatient. They go out, they test positive, probation doesn't want to revoke them, they don't want to send them back to jail, so they say, let's try this as an intermediary. That's the way the real world works. Can you point me to a case? Judge, I do have a client in state court who has some very severe schizophrenia. State court's a different one. Well, right. But, I mean, again, that's, you know. Inpatient space. I know you're making a mountain out of this, but inpatient space is very limited and it's coveted, and so it's rarely given. Probation, you have to convince. As a district judge, I felt like I had to convince them and the defendant and the defense attorney that it was the right thing. And so, Judge, taking that premise, I don't know why the government is fighting so hard to give the probation office that thing, if we're all saying that the odds that they're going to use it are low, right? But it's the government that says we want probation to have the authority. They were saying we'll talk about this in 2043. But they're saying that right now the order says that probation has to have the discretion, and so that's the order we're defending on appeal, that probation has discretion. And, yes, we can modify it later if a lawyer or Mr. You want to give them discretion to do what's in the best interest of your client down the road. Judge, I You want to give maximum discretion both for the district court and the probation officer to deal with the issues your client's facing in 2043. I see my time has expired. May I answer briefly? Yes. Yes. Judge, again, thinking about the mental health side of it, right, I have a lot of clients who do not agree that they have mental health issues, even though I think they probably do, right? And I have clients that resist being involuntarily committed, right? And so what we're talking about here is a situation in which Mr. Lockridge does not agree that inpatient treatment is appropriate. Now, whether that's right or wrong, it's his constitutional right to say that I don't want to do that, and that's the principle that we're fighting here. It's not a problem in the three circuits that I'm asking you to join. It's not a practical problem. And so I say that the Sixth Circuit should do what the other ones do. I'm getting one thing that I don't want to lose track of. You're challenging not just that it might be inpatient. You're challenging the fact that any treatment should be required, should be part of the assessment in 18 years. No, Your Honor. Just inpatient. Just inpatient. Because you're okay. You're okay with saying something is required today. You're okay with a judgment that says something is required. We're going to put in the judgment. You can assess the what in 18 years. You're okay with that, right? As long as it's outpatient, yes, because that's what the other circuits say is a-okay. We'll figure that one out in 2043. Yes. Thanks to both of you for your arguments and for your briefs. We really appreciate it. Mr. Anderson, I see you're co-reporting counsel. Yes, sir. Mr. Anderson is very – not Mr. Anderson. Mr. Lockridge, it's very lucky to have you. You're a vigorous advocate. Thank you, Your Honor. All right.